In re Robert C. NOWINSKI, Debtor.

No. 02–15295 (SMB).

United States Bankruptcy Court,
S.D. New York.

April 8, 2003.

Carpenter, Bennett & Morrissey, Newark, NJ, Michael S. Waters, Jeffrey Bernstein, of counsel, Co–Counsel to Wells Fargo Bank, N.A.

Schwabe, Williamson & Wyatt, Seattle, WA, Andrew R. Gala, of counsel, Co–Counsel to Wells Fargo Bank, N.A.

Sanford P. Rosen & Associates, P.C., New York City, Sanford P. Rosen, Kenneth M. Lewis, of counsel, for Debtor.

## MEMORANDUM DECISION DENYING MOTION FOR EXTENSION OF TIME PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 4004(b)

STUART M. BERNSTEIN, Chief Judge.

Wells Fargo Bank, N.A. ("Wells Fargo") has moved pursuant to FED. R. BANKR. P. 4004(b) for an extension of time to object to the debtor's general discharge under 11 U.S.C. § 727(a). For the reasons that follow, the motion is denied.

### BACKGROUND

Robert Nowinski, the debtor, filed a chapter 7 bankruptcy petition on October 24, 2002 in this Court. At the time, he was a defendant in a matrimonial action pending in the state of Washington. The state court had appointed a receiver, (*Declaration of Andrew R. Gala in Support of Motion for Extension of Time for an Order Extending Time to File a Complaint Objecting to Discharge Pursuant to Federal Rule of Bankruptcy Procedure 4004(b)* ("*Gala Declaration*"), undated, ¶ 3), who, as discussed in more detail below, had taken possession of substantially all of Nowinski's property.

The state court case had some of the attributes of a bankruptcy proceeding. Important to the pending matter, Wells Fargo filed a proof of claim on February 27, 2002.[1] According to the claim, Nowinski owed Wells Fargo an unsecured debt in the principal amount of $1,855,000.00 based on "monies loaned." The claim was

---

1. The proof of claim is attached to the Letter of Sanford P. Rosen, Esq. to the Court, dated March 12, 2003.

signed by Clifford N. Van Curen, an Assistant Vice President, and listed Wells Fargo's address as Wells Fargo Bank, 1300 SW 5th Avenue MAC P6101–142, Portland, Oregon 97201.

At some point, Wells Fargo recovered a judgment against Nowinski in a separate proceeding. (*See Gala Declaration* ¶ 3.) It agreed not to pursue collection, and instead, worked with the receiver. (*Id.*) Wells Fargo attended the receiver's deposition of Nowinski on July 10, 2002, and reserved the right to examine the debtor. (*Id.* ¶ 4.) The receiver did not complete the deposition, and adjourned it to October 25th. (*Id.*) However, Nowinski filed this bankruptcy case on October 24th, staying the state court proceedings and preventing the completion of his deposition.

Nowinski's bankruptcy petition included a creditor matrix that listed Wells Fargo's address as the one given by Wells Fargo on the proof of claim that it had filed in the state court proceeding. (*See Voluntary Petition of Robert C. Nowinski,* dated October 24, 2002, Ex. A)(ECF Doc. # 1). On or about October 30, 2002, the clerk of the bankruptcy court mailed the Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, & Deadlines (the "Notice")(ECF Doc. # 3) to Wells Fargo at that address. The Notice included a notification that the deadline for filing objections to discharge was January 31, 2003.

The address that the clerk sent the Notice to belonged to Van Curen. Neither the clerk nor, apparently, Nowinski, was aware that Van Curen had gone on leave from Wells Fargo in May 2002, and had died two months later. (Letter from Jeffrey Bernstein, Esq. to the Court, dated

March 13, 2003, ¶ 1)("*Wells Fargo Letter.*") His files and duties were transferred to another Wells Fargo officer, Frank Martinez, in San Francisco. *Id.*

Although Wells Fargo initially contended that it never received the Notice, (*Gala Declaration* ¶ 7), it nevertheless knew that Nowinski had filed a chapter 7 bankruptcy petition.[2] On or about October 31, 2002, its Washington state court counsel sent a notice of appearance on behalf of Wells Fargo to the bankruptcy court. The notice of appearance crossed in the mail with the Notice sent by the bankruptcy clerk.

On or about November 12, 2002, Nowinski moved for a fifteen day extension of time within which to file his bankruptcy schedules and statement of financial affairs.[3] (*See Gala Declaration,* Ex. B.) A copy of the motion was sent to the attorneys that had filed the notice of appearance on behalf of Wells Fargo. The accompanying application reported that Nowinski's principal assets included artwork worth approximately $1.5 million and securities that were difficult to value. (*Application for an Order Granting the Debtor an Extension of Time in Which to File Schedules,* dated Nov. 2, 2002, ¶ 6)(ECF Doc. # 4.) The application also indicated that the state court receiver was in possession of the property, and "is particularly knowledgeable of the Debtor's financial affairs, including his assets and liabilities." (*Id.* ¶ 7.) Finally, the application stated that the meeting pursuant to § 341(a) was scheduled for December 2, 2002. (*Id.* ¶ 3.)

The motion for an extension was granted. Thereafter, Nowinski filed his statement of financial affairs, (ECF Doc. # 10),

---

2. Nowinski probably used the filing as the reason for cancelling the adjourned deposition in Washington.

3. Absent an extension, the schedules and statement of financial affairs must be filed within fifteen days of the petition date. FED. R. BANKR. P. 1007(c).

and schedules, (ECF Doc. # 11), on November 26, 2002. These filings confirmed that most of the debtor's assets were in the receiver's possession. The assets included shares of stock, artwork valued at $1.5 million, household furnishings and a piano with a combined value of $10,000.00 and approximately $120,000.00 in cash. (Statement of Financial Affairs, ¶ 6b; *accord* Schedule B, lines 2, 4, 5, 12.) In addition, the statement of financial affairs annexed three exhibits that identified the individual pieces of artwork.

On January 31, 2003, the objection deadline, Wells Fargo moved to extend the time within which to object to the debtor's discharge under Rule 4004(b). (*Motion for Extension of Time for an Order Extending Time to File A Complaint Objecting to Discharge Pursuant to Federal Rule of Bankruptcy Procedure 4004(b)*, dated January 31, 2003)("*Motion for Extension*"). Wells Fargo contended that it never received notice of the deadline, and needed more time to complete discovery and prepare a complaint in light of the complexity of Nowinski's financial affairs. In addition, it charged that the debtor had failed to cooperate with Wells Fargo when it requested information prior to the petition date about certain multinational transfers. Nowinski opposed the motion, arguing that Wells Fargo had notice of the objection deadline, and failed to pursue a challenge to the discharge in a diligent manner.

## DISCUSSION

The discharge is the most important element of the debtor's fresh start.

H.R.Rep. No. 95–595, at 128 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6089; *see Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 78 L.Ed. 1230 (1934). Accordingly, the debtor has an interest in the prompt resolution of discharge issues, *In re Davis*, 195 B.R. 422, 424 (Bankr.W.D.Mo.1996), and the law sets a tight time frame for discharge objections. Pursuant to FED. R. BANKR. P. 4004(a), objections to the discharge of an individual chapter 7 debtor must be filed "no later than 60 days after the first date set for the meeting of creditors under § 341(a)." In the absence of a timely objection, and subject to certain exceptions, "the court shall forthwith grant the discharge." FED. R. BANKR. P. 4004(c)(1).

Upon timely motion, FED. R. BANKR. P. 4004(b) authorizes the court to extend the objection deadline for "cause."[4] "Cause" is not defined, and the determination is committed to the Court's discretion. *In re Farhid*, 171 B.R. 94, 96 (N.D.Cal. 1994); *In re Nevius*, 269 B.R. 209, 211 (Bankr.N.D.Ind.2001); *In re James*, 187 B.R. 395, 397 (Bankr.N.D.Ga.1995). "Cause" is narrowly construed to promote the prompt resolution of the case and the implementation of the debtor's "fresh start". *See Dombroff v. Greene (In re Dombroff)*, 192 B.R. 615, 621 (S.D.N.Y. 1996); *In re Weinstein*, 234 B.R. 862, 866 (Bankr.E.D.N.Y.1999); *In re Grillo*, 212 B.R. 744, 746 (Bankr.E.D.N.Y.1997). The factors that inform the court's discretion include (1) whether the creditor had suffi-

---

4. FED R. BANKR. P. 4004(b) states:

   On motion of any party in interest, after hearing on notice, the court may for cause extend the time to file a complaint objecting to discharge. The motion shall be filed before the time has expired.

   Like Rule 4004(b), FED.R. BANKR. P. 4007(c) allows the court, for cause shown, to extend the same sixty day deadline that also governs the time within which a creditor must seek a determination of the dischargeability of certain types of debts specified in § 523(a) of the Code. Decisions interpreting "cause" under Rule 4007(c) are, therefore, persuasive in construing "cause" under Rule 4004(b). *In re Asbury*, 250 B.R. 59, 65 (Bankr.D.Md.2000).

cient notice of the deadline and the information to file an objection, *see Santana Olmo v. Quinones Rivera (In re Quinones Rivera)*, 184 B.R. 178, 183 (D.P.R.1995), (2) the complexity of the case, *see In re Leary*, 185 B.R. 405, 406 (Bankr.D.Mass. 1995), (3) whether the creditor exercised diligence, *see In re Farhid*, 171 B.R. at 97; *In re Grillo*, 212 B.R. at 747; *In re Mendelsohn*, 202 B.R. 831, 832 (Bankr.S.D.N.Y. 1996), (4) whether the debtor refused in bad faith to cooperate with the creditor, *see In re Benedict*, 90 F.3d 50, 55 (2d Cir.1996), and (5) the possibility that proceedings pending in another forum will result in collateral estoppel on the relevant issues. *See In re Weinstein*, 234 B.R. at 866.

■ Here, Wells Fargo has failed to establish "cause." At the outset, Wells Fargo had actual and constructive knowledge of the objection deadline. The clerk sent the Notice to Wells Fargo at the address given to the Washington state court. Although Wells Fargo first argued that the clerk never sent it the Notice, (*Gala Declaration* ¶ 7), it has since backtracked from that claim. It now acknowledges that the Notice was sent to Van Curen, who, by that time, had died, and all of his files had been transferred to Frank Martinez. (*Wells Fargo Letter* ¶ 1.) Wells Fargo failed, however, to account for the Notice once it was received.

■ In addition, Wells Fargo received information from which it could have readily computed the objection deadline. Nowinski's motion to extend the filing deadline for his schedules and statement of financial affairs, which was served on Wells Fargo's attorneys in accordance with their notice of appearance, stated that the § 341(a) meeting was scheduled for December 2, 2002. As explained earlier, the objection deadline runs for sixty days from that date. The sixtieth day after December 2, 2002 fell on January 31, 2003.[5]

■ Notwithstanding its knowledge of the case no later than October 30, 2002, and its evident interest in these proceedings, Wells Fargo failed to take any steps during the ensuing ninety days to acquire the information it now says it needs more time to get. It apparently stayed away from the § 341(a) meeting, and failed to seek an order pursuant to FED. R. BANKR. P.2004, to examine the debtor or obtain documents, until two weeks *after* the deadline for objections to discharge. Furthermore, there is no evidence that it attempted to obtain information from the receiver who had possession of substantially all of the debtor's assets. Knowledge of the deadline coupled with the failure to diligently seek discovery is, absent unusual circumstances, fatal to an extension motion. *See e.g., In re Farhid*, 171 B.R. at 97 (no cause where creditor failed to attend creditors conference or seek the necessary information from the debtor); *In re Woods*, 260 B.R. 41, 45 (Bankr.N.D.Fla. 2001)(no cause where creditor failed to attend § 341(a) meeting or take any steps during the 110 days between the notice of the commencement of the case and the objection deadline, and filed the extension motion on the date of the deadline); *In re*

---

5. In fact, mere knowledge of a pending chapter 7 bankruptcy amounts to actual knowledge of the objection deadline. *Cf. GAC Enters., Inc. v. Medaglia (In re Medaglia)*, 52 F.3d 451, 457 (2d Cir.1995) (knowledge of an individual debtor's chapter 7 petition enables the creditor to estimate the bar date for filing claims and seeking the determination of the dischargeability of debts). Electronic filing has made discovery of the deadline a simple task. The deadline is always contained in the Notice. *See* Official Forms 9A, 9C. Any individual with a computer and a PACER number can access the Court's electronic files from any location, and check the Notice sent by the clerk.

*Grillo,* 212 B.R. at 747 (no cause where, except for filing a Rule 2004 motion five days before the deadline, creditor sat on its rights and made no effort to obtain information); *In re Dekelata,* 149 B.R. 115, 117 (Bankr.E.D.Mich.1993) (no cause where creditor sought Rule 2004 examination only eleven days prior to expiration of the deadline).[6]

Given Wells Fargo's lack of diligence during the ninety days between its notice of appearance and its motion for an extension, its claims that the case is complex or that Nowinski failed to cooperate are unpersuasive. Although Nowinski owns more property than the usual chapter 7 debtor, he particularized and identified those assets, including his artwork, in the statement of financial affairs. Wells Fargo insists that "[t]he authentication and value of these assets must be verified." (*Gala Declaration* ¶ 10.) It is not clear how the questions of authentication or valuation bear on the issue of discharge since Nowinski disclosed the assets. In any event, Wells Fargo did not make any effort to authenticate or value these assets, which have been in the hands of the receiver, after learning of Nowinski's bankruptcy.

Wells Fargo also contends that it actively sought information from Nowinski regarding the validity of certain transfers. It charges that "[n]either Debtor, nor his state court counsel, cooperated with Wells Fargo in providing supporting documentation for these transfers." (*Gala Declaration* ¶ 10.) Without a finding of bad faith on the part of the debtor, however, mere recalcitrance in discovery does not support a finding of "cause". *In re Benedict,* 90 F.3d at 54–55. Wells Fargo has not alleged any facts indicating bad faith on the part of the debtor, and in fact, has not charged the debtor with bad faith in failing to cooperate.

In any event, Wells Fargo has not charged Nowinski or his bankruptcy counsel with lack of cooperation. Nor could it since it never asked for any information during the bankruptcy case prior to the deadline for objections. Accordingly, its motion for an extension of time to object to Nowinski's discharge is denied. Settle order on notice.

---

**6.** Wells Fargo argues that it demonstrated diligence by filing the extension motion. (*Wells Fargo Letter* ¶ 4.) Since the creditor must file a timely motion *and* show "cause," the mere filing of a timely motion, without more, cannot equal cause. Otherwise, Rule 4004(b) would simply require the filing of a timely motion to obtain an extension, without the need to make any further showing.